[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION TO STRIKE (125.00)
FACTS
On August 21, 2001, the plaintiff, Royal Insurance Company (Royal) commenced this subrogation action by service of the summons and complaint on the defendant, Prudential Residential Services Limited Partnership, doing business as Prudential Relocation Management (Prudential). In its single-count complaint against Prudential, the plaintiff alleges that Prudential breached its contract with the plaintiff's insured, John Helmers. Specifically, Royal alleges that John and Adele Glenn Helmers (Helmers) entered into a contract with Prudential for the purchase of a property owned by Prudential in Darien, Connecticut. The plaintiff further alleges that, pursuant to paragraph eighteen of the seller's rider, Prudential represented that the property did not contain any leaking fuel tanks, oil contamination or abandoned underground fuel oil tanks. The sale was consummated on February 11, 1997, after which the Helmers allegedly discovered fuel oil in a stream located on the property, an oil leak from an underground fuel line and an abandoned underground fuel oil tank. Due to Prudential's alleged breach of contract, Royal, in its capacity as John Helmers' insurer, allegedly paid $65,000 in insurance proceeds to John Helmers for remediation of the property. Royal claims that, as a result, it is subrogated to the rights of its insured against Prudential to the extent of that payment.
On May 22, 2002, Prudential filed a motion to implead the Helmers and two additional parties as third-party defendants, alleging that they are potentially liable to Prudential for the plaintiff's claim. The motion was granted by the court (Ryan, J.) on June 4, 2002.
On September 12, 2002, Prudential filed a second amended answer, special defenses, and counterclaims. In its first counterclaim, for breach of contract, Prudential alleges that it entered into a contract with the Helmers in which the Helmers agreed to notify Prudential of any defects in the property within a specific time limit. Prudential alleges that the CT Page 2254 Helmers breached the contract because they failed to notify it of any defects within that time limit. In its second counterclaim, Prudential alleges that, pursuant to its contract with the Helmers, Royal, as subrogee of John Helmers, is obligated to defend and indemnify Prudential in connection with the present action. In its third counterclaim, Prudential asserts a cause of action against Royal for vexatious litigation, based on the plaintiff's conduct in initiating and prosecuting the present action.
On September 26, 2002, the plaintiff filed a motion to strike all three counterclaims, accompanied by a memorandum in support. On October 16, 2002, Prudential filed a memorandum in opposition.
 DISCUSSION
"A motion to strike tests the legal sufficiency of a cause of action and may properly be used to challenge the sufficiency of a counterclaim."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495, 496,495 A.2d 286 (1985); see also Practice Book § 10-39(a). "[I]n determining the sufficiency of a [counterclaim] challenged by a [plaintiff's] motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Internal quotation marks omitted.) Gazo v. Stamford, 255 Conn. 245,260, 765 A.2d 505 (2001). "A motion to strike admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy ofopinions stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. United Technologies Corp. ,240 Conn. 576, 588, 693 A.2d 293 (1997). "A motion to strike is properly granted if the [counterclaim] alleges mere conclusions of law that are unsupported by the facts alleged." Novametrix Medical Systems, Inc. v.BOC Group, Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). "[I]f facts provable in the [counterclaim] would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) Gazo v.Stamford, supra, 260.
Royal moves to strike all three counterclaims on the ground that Prudential may not assert counterclaims against it as subrogee in this subrogation action. Although the plaintiff concedes that it, as subrogee of its insured, John Helmers, stands in the place of its insured and is, therefore, subject to any and all defenses that Prudential has against its insured, it argues that a counterclaim to an action is not a defense. Prudential counters that the plaintiff, as subrogee, stands in the shoes of its insured and is, therefore, subject to any claims that arose out of the transaction that is the subject of the plaintiff's complaint. CT Page 2255
"In its simplest form, subrogation allows a party who has paid a debt to `step into the shoes' of another . . . to assume his or her legal rights against a third party to prevent that party's unjust enrichment . . . In that way, an insurance company, for example, can be substituted for the insured in an action against a third-party tortfeasor. The insured, having been paid by the insurer, in essence, transfers his rights against the tortfeasor to the insurer. The insurer, thus, can attempt to collect from the party that caused the loss to the extent expended by the insurer in satisfying the claim." (Citation omitted.)Wasko v. Manella, 74 Conn. App. 32, 35-36, 811 A.2d 727 (2002). "The insurer's right of subrogation against third persons causing the loss paid by the insurer to the insured . . . arises out of the contract of insurance and is derived from the insured alone. Consequently, the insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee . . . stands in the place of the insured and succeeds to whatever rights he may have in the matter. Therefore, any defense which a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured." (Emphasis added; internal quotation marks omitted.) Orselet v.DeMatteo, 206 Conn. 542, 546-47, 539 A.2d 95 (1988).
Although the Connecticut Supreme and Appellate Courts have not ruled on the question of whether a defendant may assert a counterclaim against an insurer in a subrogation action, other authorities have distinguished the defendant's right to bring a special defense from the defendant's right to bring a counterclaim. According to one such authority, "[a]s a qualification to the concept that the subrogated insurer stands in the identical position as the insured subrogor, it may be held that the subrogee is not subject to counterclaims which the wrongdoer could have asserted had he been sued by the insured." 16 G. Couch, Insurance (2d Ed. 1983) § 61:236, p. 296. For example, in both Seaco Ins. Co. v.Devine Bros., Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 00 0374721 (June 13, 2001, Skolnick; J.) (29 Conn.L.Rptr. 742), and Liberty Mutual Ins. Co. v. Luna, 40 Conn. Sup. 89,481 A.2d 427 (1984), the Superior Court rejected the proposition that a defendant is entitled to assert a counterclaim against a subrogee for the tortious conduct of its insured. In the former case, in which the insured was not a party to the action, the court explained that while a subrogee succeeds to the rights of the insured and is subject to all defenses which would have been available against the insured, "a counterclaim is not one of these rights or defenses and, therefore, cannot be asserted CT Page 2256 against a nonparty to the action." Seaco Ins. Co. v. Devine Bros., Inc.,supra, 29 Conn.L.Rptr. 742-43.
Likewise, in Liberty Mutual Ins. Co. v. Luna, supra, 40 Conn. Sup. 89-90, a motor vehicle collision case, the defendant filed a counterclaim against the plaintiff, alleging that the plaintiff's insured was responsible for the collision. The court granted the plaintiff's motion to strike the counterclaim, concluding that "[w]hile the negligence of [the insured] may constitute a defense to the plaintiff's action, that is not to say that it provides the basis for [a counterclaim] against the plaintiff." Id., 90.
Other Superior Court decisions addressing this issue have rejected the proposition that a defendant is entitled to assert a counterclaim against a subrogee for the tortious conduct of its insured, albeit by implication. For example, in Allstate Ins. Co. v. Appell, 39 Conn. Sup. 85,85-86, 469 A.2d 949 (1983), and Hartford Fire Ins. Co. v. Lewis,16 Conn. Sup. 90 (1948), both courts ordered the subrogee's insured to be cited in to respond to the defendant's proposed counterclaims.[1]
The above cases, both explicitly and implicitly, have rejected the contention that a defendant can assert a counterclaim against a subrogee for the tortious conduct of its insured. Although these decisions are not binding on this court, their reasoning is nonetheless persuasive. Prudential's first and second counterclaims are both premised upon a contract between Prudential and the Helmers, a contract to which the plaintiff was not a party. Given that a contract cannot be enforced against a plaintiff who is not a party to the contract; Reynolds v.Owen, 34 Conn. Sup. 107, 111, 380 A.2d 543 (1977); the court grants the plaintiff's motion to strike the first and second counterclaims.[2]
In the third counterclaim, Prudential asserts a cause of action against the plaintiff for vexatious litigation. This presents a different situation, because this claim is based upon the plaintiff's alleged conduct, and not upon that of its insured. Prudential alleges that the "[p]laintiff has commenced and prosecuted the instant action against Prudential Relocation without probable cause and with malicious intent to unjustly vex and trouble Prudential." Royal argues that the vexatious litigation claim is legally insufficient because Prudential cannot bring the claim when the underlying action is still pending. The defendant counters that pursuant to the policy of judicial economy, it may assert a counterclaim for vexatious litigation while the underlying case is still pending.
"In suits for vexatious litigation, it is recognized to be sound policy CT Page 2257 to require the plaintiff to allege that prior litigation terminated in his favor. This requirement serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts . . . The requirement furthermore serves the interest of finality of judicial decisions by preventing a person who was unsuccessful in the original proceeding from relitigating the same issues in a subsequent action for vexatious litigation." (Citation omitted; internal quotation marks omitted.) Zeller v. Consolini, 235 Conn. 417,424, 667 A.2d 64 (1995). The Supreme Court endorsed this policy recently in dicta in QSP, Inc. v. Aetna Casualty Surety Co., 256 Conn. 343,361, 773 A.2d 906 (2001). A majority of Superior Court decisions have accepted this premise and have stricken vexatious litigation counterclaims when they are asserted within the same case that the counterclaiming party alleges to be vexatious. See, e.g., ClassicLimousine Airport Service, Inc. v. Alliance Limousine, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 99 0174911 (August 13, 2002, D'Andrea, J.T.R.), and cases cited therein;Traba v. New Haven Ballet, Superior Court, judicial district of New Haven, Docket No. CV 01 0453157 (October 2, 2001 Robinson, J.); Gilbertv. Beaver Dam Assn., Stratford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV 00 0374905 (July 24, 2001, Rush, J.).[3] This court agrees with the policy stated in Zeller v.Consolini and with the majority of Superior Court decisions that have addressed this issue. In the present action, Prudential does not allege that prior litigation has terminated in its favor, but, rather, that "[u]pon information and belief, the instant action will be terminated in [Prudential's] favor." For the above reasons the court grants the plaintiff's motion to strike the third counterclaim.
 TAGGART D. ADAMS SUPERIOR COURT JUDGE